STATE OF NEW MEXICO
COUNTY OF RIO ARRIBA
FIRST JUDICIAL DISTRICT COURT

RHIANNON MONTOYA,
            **Plaintiff,**

v.                                      **No. D-117-CV-2015-00078**

COUNTY OF RIO ARRIBA and
RIO ARRIBA COUNTY
DETENTION CENTER,
            **Defendants.**

## AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE AND VIOLATION OF CIVIL RIGHTS

**COMES NOW**, Plaintiff, Rhiannon Montoya, by and through her attorneys, SANCHEZ LAW GROUP, LLC., and brings this amended complaint for damages caused by the violation of her civil and constitutional rights: Plaintiff files this complaint under the Constitution of the United States and New Mexico. Plaintiff also brings claims under the New Mexico Tort Claims Act and/or common law. In support of this Complaint Plaintiff alleges the following:

### I.      PARTIES, JURISDICTION, AND VENUE

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1985 and 1988 and N.M. Const. Art. II Sec. 10, N.M. Const. Art. II Sec. 13 and N.M. Const. Art. II Sec. 18.

2. At all times material hereto, Plaintiff, Rhiannon Montoya (hereinafter "Plaintiff" or "Montoya") is an individual over the age of eighteen (18), is a resident of the, County of Rio



EXHIBIT

Arriba, and State of New Mexico, however she is currently incarcerated at the New Mexico Women's Correctional Facility in Grants, New Mexico Cibola County, New Mexico.

3. At all times material to this Complaint, Defendants Board of County Commissioners for the County of Rio Arriba (hereinafter "County") is a political subdivision recognized by the laws of the State of New Mexico, which can be sued pursuant to N.M.S.A. 1978, § 4-46-1, is located in Rio Arriba County, New Mexico.  County is a legal entity organized under the laws of New Mexico and can sue or be sued and is a "public employer" under N.M.S.A. 1978, § 10-16C-2.

4. The Rio Arriba County Detention Center (hereinafter "RACDC") is a facility whose primary function is to hold in custody persons awaiting trial on criminal charges.  Rio Arriba County Detention Center is owned, operated and maintained by the County of Rio Arriba and is a public building within the meaning of N.M.S.A. 1978 § 41-4-6.

5. All Rio Arriba County Detention Center officers and employees implicated in this action are law enforcement officers, as defined by N.M.S.A. 1978 § 41-4-3(D), and were at all material times acting in the course and within the scope of their official duties.  As their employer, the County of Rio Arriba is liable for all of their acts and omissions alleged herein under the doctrine of respondeat superior.

6. Defendant Larry DeYapp was acting under color of state law and within the scope of his employment at all material times.

7. Defendant DeYapp is sued in his individual and official capacities both as a governmental actor and as a high-ranking administrator of the RACDC with the County.

2

8.   Defendant Jose Louis Gallegos was acting under color of state law and within the scope of his employment at all material times.

9.   Defendant Gallegos is sued in his individual and official capacities both as a governmental actor and as a high-ranking administrator of the RACDC with the County.

10. Defendant Orlando Ulibarri, was acting under color of state law and within the scope of his employment at all material times.

11. Defendant Ulibarri is sued in his individual and official capacities both as a governmental actor and as a guard of the RACDC with the County.

12. This Court has subject matter jurisdiction.

13. This Court has jurisdiction over the parties.

14. Venue is proper in this Court.

15. All actions complained of in this Complaint occurred in the County of Rio Arriba and the State of New Mexico and, therefore, venue and jurisdiction are proper in this Court.

16. Pursuant to NMSA § 38-3-2, venue is Rio Arriba County, New Mexico

17. The agent for service of process is the clerk of the County under N.M.S.A. 1978, § 4-46-2.

## GENERAL FACTS FOR ALL COUNTS

18. Plaintiff, Ms. Rhiannon Montoya (hereinafter "Plaintiff") is a prisoner of New Mexico Women's Correctional Facility in Grants, New Mexico.

19. At the time relevant to the general facts for all counts, Plaintiff was incarcerated at the RACDC.

3

20. Mr. Orlando Ulibarri (hereinafter "Defendant Ulibarri") was a Correctional Officer with the RACDC in 2013 and at the times relevant to the general facts for all counts.

21. In his capacity Defendant Ulibarri was a pod officer which means he acted as a supervising officer to inmates while the inmates were in their pods, and where the inmates sleep, shower, change clothes, use the bathroom and carry on all of their day-to-day activities.

22. Plaintiff resided in the pod Defendant Ulibarri supervised.

23. Upon information and belief Defendant Ulibarri was the only correctional officer present in the female part it at the time of his shifts.

24. On or about March 17, Defendant Ulibarri was conducting a unit check between 9:30 p.m. and 10:00 p.m. Plaintiff advised Defendant Ulibarri of an unresolved maintenance request for a clogged shower drain.

25. Defendant Ulibarri followed Plaintiff into the shower stall to see the drain problem, wherein Defendant Ulibarri began to touch Plaintiff's hair and then pulled Plaintiff closer to him and began forcefully kissing her and then proceeded to put his tongue into Plaintiff's mouth .

26. While kissing Plaintiff, Defendant Ulibarri then placed his hand on her buttocks and began to rub them, wherein Plaintiff pulled away and ran back to her bunk.

27. Plaintiff was in charge of doing laundry for the pod every Sunday and Thursday, and had help occasionally from inmates Anjelica Garcia and Melissa Herrera.

28. Defendant Ulibarri would offer items such as soda, Chap Stick, tobacco, candy and pens to Ms. Garcia and Ms. Herrera in exchange for them leaving the room and act as a look out while Defendant Ulibarri spent time with Ms. Montoya.

4

29. On or near the end of March Defendant Ulibarri addressed Plaintiff via the intercom and requested her to go to the control bubble where he was located, and offered Plaintiff some Dr. Pepper and also gave her eye shadow, tweezers, earrings and lip gloss.

30. After Defendant Ulibarri gave Plaintiff the items he stated, "I brought you gifts you're going to do something for me" while gesturing to his penis.

31. Defendant Ulibarri continued to give Ms. Montoya items on a regular basis.

32. On or around April 4, 2013 Defendant Ulibarri gave Plaintiff a purple rosary he made for her as a present for her birthday.  Defendant Ulibarri then told her, "I know purple is your favorite color."

33. On or about March 31, 2013 Plaintiff was doing laundry when Defendant Ulibarri entered the area and stated to Plaintiff, "I want you to do something for me".

34. Defendant Ulibarri then grabbed Plaintiff and kissed Plaintiff with his tongue, and while kissing her, Defendant Ulibarri proceeded to place his hands over Plaintiff's shirt and grab her breasts and squeezed her breasts.

35. Defendant Ulibarri told Plaintiff that she was going to be sent to the Gallup detention center, if Plaintiff didn't comply with Defendant Ulibarri's requests.  Plaintiff had been previously battered and assaulted by other inmates while at the Gallup Detention Center.

36. Defendant Ulibarri then proceeded to place his hand on Plaintiff's head and forced her head down to his genital area, where Defendant Ulibarri unzipped his zipper pulling out and exposing his penis to Plaintiff and forced Plaintiff to perform oral sex on Defendant Ulibarri.

37. On or about April 14, 2013 Plaintiff was doing laundry when Defendant Ulibarri approached her and began stroking Plaintiff's hair.

38. Plaintiff inquired with Defendant Ulibarri about her alleged transfer to Gallup Detention Center, wherein Defendant Ulibarri responded to Plaintiff that it was up to him if they sent Plaintiff to the Gallup Detention Center and that Defendant Ulibarri informed Plaintiff that he wanted another favor.

39. Defendant Ulibarri proceeded to pull up Plaintiff's shirt and her sports bra, he grabbed Plaintiff's breast, pulled down her pants and underwear and forced Plaintiff to bend over a chair. Defendant Ulibarri then pulled out his penis and inserted it in Plaintiff's vagina, pulled her hair and slapped her buttocks asking Plaintiff if it felt good. Defendant Ulibarri then ejaculated, pulled his penis out and told Plaintiff to get dressed and not to tell anyone about this encounter.

40. On many occasions Plaintiff had filed grievances, with one such request by letter from Ms. Robin Salais dated June 10, 2013, but these grievance letters were ignored by the County of Rio Arriba. *See Attached Letters Attached and Incorporated herein as Attachment A.*

41. After the incidents involving Defendant Ulibarri and Plaintiff's grievance letters, Plaintiff began to have health and medical issues, which were ignored and overlooked by RACDC.

42. A rumor was started that Plaintiff was allegedly pregnant, which was not true.

43. Plaintiff was transferred to the Gallup Detention Center.

44. On or around February 2014 Plaintiff got very ill and had an issue with a lump on her breast, which got infected.

45. Plaintiff brought this to the attention of RACDC staff, and had even submitted five (5) medical requests, which were ignored.

46. Plaintiff was scheduled for a hearing and she showed a female guard, and the female guard informed Plaintiff that she would try to get her medical aid.

47. Plaintiff was set to be transported back to Gallup Detention Center after the hearing, but she was running an fever and was very weak.

48. Plaintiff was taken to the clinic in Tierra Amarilla, New Mexico, where the doctor advised the guard that Plaintiff needed to be transported to the emergency room and not to Gallup Detention Center.

49. RACDC staff targeted Plaintiff after the incidents with Defendant Ulibarri and the grievance requests.

50. Plaintiff's possessions, such as journals with dates and times, were taken from Plaintiff by RACDC staff.

51. RACDC staff would also take Plaintiff's hygiene items and distribute them to other inmates.

52. Plaintiff attempted to address these concerns by writing several grievances to no avail.

53. Plaintiff was constantly harassed by other inmates for getting Defendant Ulibarri fired.

54. Plaintiff sent a letter to Mr. Tomas Campos on June 10, 2013 through Ms. Salais (Plaintiff's Power of Attorney) notifying the County of Rio Arriba that Plaintiff may be seeking claims for damages from a sexual assault by Correctional Officer Ulibarri. *See Attachment A.*

55. Defendant Gallegos did not notify officials about Plaintiff's allegations until August 6 2013.

56. Defendant Gallegos threatened Plaintiff that "she didn't want to pursue this and was going to regret it."

57. It was not until August, 9 2013, that Defendant Ulibarri gave his statement to New Mexico State Police Officer Mark Sandoval.

58. On August 21, 2013 the incident was "closed" by Officer Sandoval.

59. Officer Sandoval never interviewed Plaintiff regarding her claims of sexual assault by Defendant Ulibarri.

## COUNT I
## DAMAGES FOR NEGLIGENCE UNDER THE NEW MEXICO TORT CLAIMS ACT

60. Plaintiff restates each and every allegation set forth in the preceding paragraphs is incorporated by reference as if set forth fully herein.

61. The New Mexico Tort Claims Act waives Sovereign Immunity for claims of assault and battery by law enforcement officers acting within the course and scope of their employment.

62. Plaintiff sent Notice Seeking Claims for Damages pursuant to the New Mexico Tort Claims Act NMSA § 40-4-16 to the County Manager of Rio Arriba County on June 10, 2013, via Ms. Robin Salais who had Power of Attorney for Plaintiff.

63. Defendants RACDC, DeYapp, Gallegos and Ulibarri had a duty to exercise reasonable care in protecting the safety and welfare of inmates while incarcerated at RACDC, and in supervising the maintenance and operation of RACDC.

64. Defendants RACDC, DeYapp and Gallegos failed to exercise such care by failing to protect Plaintiff from Defendant Ulibarri's sexual interactions with Plaintiff.

65. The sexual actions by Defendant Ulibarri against Plaintiff was reasonably foreseeable under the circumstances of this case.

66. RACDC owed Plaintiff a duty to provide a reasonably safe environment and to protect her from foreseeable risks, including the risk of sexual attacks on her by Defendant Ulibarri.

67. Said duty included the duty to provide adequate means and staff to monitor officer behavior, and to adequately train and supervise staff in the performance of their jobs, including monitoring officer behavior.

68. RACDC and its employees negligently failed to adequately monitor officer behavior when Plaintiff was sexually assaulted.

69. RACDC and its supervisory employees negligently failed to adequately train and/or supervise the staff members that were on duty when Plaintiff was sexually assaulted.

70. As a direct and proximate result of RACDC's negligence as described herein, Defendant Ulibarri was able to sexually assault Plaintiff.

71. Plaintiff suffered damages as a proximate result of the sexual assaults, and the negligence of the County's agents and employees.

72. The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

73. As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life. Some of these damages and injuries have and will continue on into the future.

74. As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

**COUNT II**
**Cruel and Unusual Punishment in Violation of the Due Process Clause of the Eighth and Fourteenth Amendments of the United States Constitution and Article II Section 13 of the New Mexico Constitution**

75. Plaintiff restates each and every allegation set forth in the preceding paragraphs is incorporated by reference as if set forth fully herein.

76. Plaintiff enjoyed the right to be secure in her bodily integrity and free from sexual attack by Rio Arriba County detention center personnel under both the eighth and fourteen amendments.

77. Defendant Ulibarri's actions were intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless regard of Plaintiff's constitutional rights.

78. Defendant Ulibarri acted with the purpose of causing harm to and victimizing Plaintiff and not to accomplish any legitimate goal.

79. The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

80. As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life. Some of these damages and injuries have and will continue on into the future.

81. As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

**COUNT III**
**False Arrest/Unreasonable Seizure in Violation of the**
**Fourth Amendment to the United States Constitution and**
**Article II Section 10 of the New Mexico Constitution**

82. Plaintiff restates each and every allegation set forth in the preceding paragraphs is incorporated by reference as if set forth fully herein.

83. At the time of Defendant Ulibarri's sexual harassment and battery against Plaintiff, she enjoyed the right to be free from unreasonable search and seizure under the Fourth Amendment of the United States Constitution and Article II Section 10 of the New Mexico Constitution.

84. Because Defendant Ulibarri was guarding/supervising Plaintiff as her corrections officer, Plaintiff was not able to physically leave or verbally protest when Defendant Ulibarri entered her work area to sexually assault her and confined her in order to commit a sexual battery against her.

85. When Defendant Ulibarri sexually harassed and battered Plaintiff, he did not have a legitimate purpose for her detention.

86. Defendant Ulibarri's sexual harassment and batteries violated Plaintiff's Fourth Amendment and Article II Section 10 right to be free from false arrest and/or unreasonable seizure.

87. Defendant Ulibarri's actions were intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless regard of Plaintiff's constitutional rights.

88. Defendant Ulibarri acted with the purpose of causing harm to and victimizing Plaintiff and not to accomplish any legitimate goal.

11

89. The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

90. As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life. Some of these damages and injuries have and will continue on into the future.

91. As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

## COUNT IV
### Violation of Ms. Montoya's Right to Equal Protection of the Law Under the Fourteenth Amendment to the United States Constitution and Article II Section 18 of the New Mexico Constitution

92. Plaintiff restates each and every allegation set forth in the preceding paragraphs is incorporated by reference as if set forth fully herein.

93. At all times relevant to this complaint, Plaintiff enjoyed the right to equal protection of the law under the Fourteenth amendment to the United States Constitution and Article II Section 18 of the New Mexico Constitution.

94. Male inmates at RACDC under Defendant Ulibarri's supervision were similarly situated to Plaintiff, as she was an inmate at RACDC under Defendant Ulibarri's supervision.

95. Defendant Ulibarri sexually harassed and battered Ms. Montoya while acting as her supervising pod officer.

96. Upon information and belief Defendant Ulibarri did not, sexually harass and batter male inmates under his supervision as he did to Plaintiff.

97. Defendant Ulibarri sexually harassed and battered Plaintiff because she is a woman. In doing so, Defendant Ulibarri violated Plaintiff's fourteenth amendment right to the equal protection of the law.

98. Defendant Ulibarri preyed on Plaintiff's fears of being relocated and of his position as her supervising pod officer at RACDC,

99. Defendant Ulibarri's actions were intentional, malicious, sadistic, willful, wanton, and in gross and reckless regard of or deliberate indifference to Plaintiff's constitutional rights.

100.   Defendant Ulibarri acted with the purpose of causing harm to and victimizing Plaintiff and not to accomplish any legitimate goal.

101.   The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

102.   As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life. Some of these damages and injuries have and will continue on into the future.

103.   As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

## COUNT V
Cruel and Unusual Punishment in Violation of the Due Process Clause of the Eighth and Fourteenth United States Constitution and
Article II Sections 13 & 18 of the New Mexico Constitution (DeYapp)

104.    Plaintiff restates each and every allegation set forth in the preceding paragraphs is incorporated by reference as if set forth fully herein.

105.    At the time of Defendant Ulibarri's sexual harassment and battery of Plaintiff, Plaintiff enjoyed constitutional protection against cruel and unusual punishment for use of force under the due process clause of the Fourteenth Amendment of the U.S. Constitution and Article II Sections 13 & 18 of the New Mexico Constitution.

106.    Alternatively, at the time of Ulibarri's sexual harassment and battery of Ms. Montoya, Ms. Montoya enjoyed constitutional protection against cruel and unusual punishment for use of force against people who have been convicted of crimes under the Eighth amendment and applies to the states via the fourteenth amendment.

107.    Plaintiff's Eighth amendment right and Article II Sections 13 and 18 right was violated by Defendant Ulibarri when he used his position as a corrections officer to sexually harass and batter her.

108.    By failing to protect Plaintiff from Defendant Ulibarri's sexual harassment and battery and by failing to institute and/or enforce any physical, procedural and/or regulatory safeguards to protect inmates from sexual assault, battery and harassment, Defendant DeYapp violated Plaintiff's eighth and/or fourteenth amendment rights and Article II Sections 13 & 18 rights to bodily integrity and freedom from cruel and unusual punishment.

109.    Defendant DeYapp's acts were intentional, malicious, sadistic, willful, wanton, and obdurate and in gross and reckless disregard of Plaintiff's constitutional rights.

14

110. The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

111. As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life. Some of these damages and injuries have and will continue on into the future.

112. As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

**COUNT VI**
**False Arrest/ Unreasonable Search and Seizure in Violation of the Fourth Amendment to the United States Constitution and Article II Section 10 of the New Mexico Constitution (DeYapp)**

113. Plaintiff restates each and every allegation set forth in the preceding paragraphs is incorporated by reference as if set forth fully herein.

114. At the time of Defendant Ulibarri's sexual harassment and battery against Plaintiff, she enjoyed the right to be free from unreasonable search and seizure under the fourth amendment.

115. Because Defendant Ulibarri was supervising her as corrections officer, Plaintiff was not able to physically leave or verbally protest when Defendant Ulibarri entered her work area to sexually harass her and confined her in order to commit a sexual battery against her.

116. By failing to protect Plaintiff from Defendant Ulibarri's sexual harassment and battery and by failing to institute and/or enforce any physical, procedural and/or regulatory

15

safeguards to protect inmates from sexual assault, battery and harassment, Defendant DeYapp violated Plaintiff's Eighth and/or Fourteenth Amendment rights and Article II Section 10 of the New Mexico Constitution right to bodily integrity and freedom from cruel and unusual punishment.

117.    Defendant DeYapp's acts were intentional, malicious, sadistic, willful, wanton, and obdurate and in gross and reckless disregard of Ms. Montoya's constitutional rights.

118.    The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

119.    As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life. Some of these damages and injuries have and will continue on into the future.

120.    As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

## COUNT VII
### Violation of Plaintiff's Right to Equal Protection of the Law Under the Fourteenth Amendment to the United States Constitution and Article II Section 18 of the New Mexico Constitution (DeYapp)

121.    Plaintiff restates each and every allegation set forth in the preceding paragraphs is incorporated by reference as if set forth fully herein.

122.   At all times relevant to this complaint, Plaintiff enjoyed the right to equal protection of the law under the Fourteenth Amendment to the United States Constitution and Article II Section 18 of the New Mexico Constitution.

123.   Male inmates at RACDC under Defendant Ulibarri's supervision were similarly situated to Plaintiff, as she was an inmate at RACDC under Defendant Ulibarri's supervision.

124.   Defendant Ulibarri sexually harassed and battered Plaintiff while acting as her supervising pod officer.

125.   Upon information and belief Defendant Ulibarri did not, sexually harass and batter male inmates under his supervision as he did to Plaintiff.

126.   Defendant Ulibarri sexually harassed and battered Plaintiff because she is a woman.

127.   By failing to protect Plaintiff from Defendant Ulibarri's sexual harassment, battery, and disparate treatment under the law, by failing to institute and/or enforce any physical, procedural and/or regulatory safeguards to protect inmates from sexual assault, battery, and harassment, and by placing male correctional officers in all female pods despite the foreseeable risk of harm that could result from such placement, Defendant DeYapp violated Plaintiff's Fourteenth Amendment right and Article II Section 18 of the New Mexico Constitution to the equal protection of the law.

128.   Defendant DeYapp's acts were intentional, malicious, sadistic, willful, wanton, and obdurate and in gross and reckless disregard of Plaintiff's constitutional rights.

129.   The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

130.   As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life.  Some of these damages and injuries have and will continue on into the future.

131.   As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

**COUNT VIII**
**Violation of Substantive Due Process:**
**Inhumane Conditions of Confinement/Inadequate Medical Care**

132.   Plaintiff restates each and every allegation set forth in the preceding paragraphs and is incorporated by reference as if set forth fully herein.

133.   Plaintiff has a substantive due process right under the Fourteenth Amendment to humane conditions and adequate medical care.

134.   Plaintiff has a similar substantive due process right to humane conditions of confinement and adequate medical care under Article II Section 14 of the New Mexico Constitution.

135.   Rather than provide Plaintiff with adequate medical care after she had brought issues with a lump in her breast and her conditions regarding he health, the RACDC staff chose to ignore her medical requests.

136.   It was not until she became very weak with a high fever while she was in Court in Tierra Amarilla, New Mexico, that RACDC staff finally allowed Plaintiff to see a physician at the Tierra Amarilla, New Mexico Clinic, wherein the doctor recommend that she needed to be admitted to the Emergency Room.

137.    Rather then acknowledging Plaintiff's medical requests, she was met with retaliation, for reporting Defendant Ulibarri's sexual harassment and battery, from the RACDC staff as she was targeted for searches, RACDC confiscated her journals and allowing theft of her personal items.

138.    RACDC staff and Defendants acted with deliberate indifference to this risk and retaliation

139.    By failing to protect Plaintiff from RACDC staff's refusal to provide Plaintiff with adequate medical care and humane conditions in her confinement amounted to deliberate indifference in violation of the Fourteenth Amendment to the United States Constitution and Article II Section 14 of the New Mexico Constitution.

140.    Defendant DeYapp's acts were intentional, malicious, sadistic, willful, wanton, and obdurate and in gross and reckless disregard of Plaintiff's constitutional rights.

141.    The County is liable for Plaintiff's injuries by virtue of the doctrine of *respondeat superior*.

142.    As a result of the actions and/or inactions of the Defendants, Plaintiff suffered bodily injury, incurred medical expenses, experienced pain and suffering, mental anguish, a loss of consortium, and a loss of enjoyment of life. Some of these damages and injuries have and will continue on into the future.

143.    As a result of Defendant's actions and omissions, Plaintiff has suffered damages more fully explained below, and to be proven at trial.

144.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts.

## GENERAL PRAYER FOR RELIEF AS TO ALL COUNTS

**WHEREFORE,** Plaintiff respectfully prays for:

A.  Judgment for damages and punitive damages against all defendants, jointly and severally, in such amount as shall be proved reasonable at trial; and for costs, post-judgment interest;

B.  Judgment for damages and punitive damages against all defendants, jointly and severally, for deprivation of civil rights, in such amount as shall be proved reasonable at trial; and for costs, post-judgment interest;

C.  Award against Defendants and in favor of Plaintiff, liquidated damages and pre-judgment and post-judgment interest in amounts to be proven at trial;

D.  Award against Defendants and in favor of Plaintiff, damages for pain and suffering in an amount to be proven at trial;

E.  Award against Defendant and in favor of Plaintiff, punitive damages for their willful and malicious conduct intended to cause the Plaintiff harm and injury;

F.  Award against Defendant and in favor of Plaintiff, attorney's fees and costs of this action as permitted by law;

G.  Award against Defendant and in favor of Plaintiff; such other equitable and further relief

as the Court deems proper and just.

Respectfully submitted,

SANCHEZ LAW GROUP, LLC.,

Daniel J. Sanchez, Esq.
Daniel A. Sanchez Esq.
Attorneys for Plaintiff
620 Roma Ave. N.W.
Albuquerque, NM 87102
(505) 553-0466/FAX (505) 246-2668
dlsanchezesq@gmail.com

21

VERIFICATION

STATE OF NEW MEXICO      )
                         )  ss.
COUNTY OF CIBOLA         )

I, Rhiannon Montoya, first duly sworn upon my oath, state that I have read the Amended

Complaint for Negligence and Violations of Civil Rights and it true and correct to the best of my

own knowledge and belief.

RHIANNON MONTOYA

SUBSCRIBED AND SWORN TO before me on this 9th day of December,

2015, by Rhiannon Montoya.

Notary Public

My Commission Expires:

3/24/19

OFFICIAL SEAL
Donna L. Howard
3/24/19