## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**RHIANNON MONTOYA,**

       **Plaintiff,**

**vs.**                             **Cause No. 1:16-CV-00253 JCH/GBW**

**BOARD OF COUNTY COMMISSIONERS FOR**
**RIO ARRIBA COUNTY, RIO ARRIBA COUNTY**
**and LARRY DeYAPP, JOSE LUIS GALLEGOS**
**and ORLANDO ULIBARRI, in their individual**
**and official capacity,**

       **Defendants.**

### DEFENDANTS BOARD OF COUNTY COMMISSIONERS
### FOR RIO ARRIBA COUNTY, RIO ARRIBA COUNTY,
### LARRY DEYAPP, JOSE LUIS GALLEGOS AND ORLANDO
### ULIBARRI'S OPPOSED MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Board of County Commissioners for Rio Arriba County, Rio Arriba County, Larry DeYapp and Jose Luis Gallegos, by and through their counsel of record, Yenson, Allen & Wosick, P.C. (Robert W. Becker, appearing), and Orlando Ulibarri, by and through his counsel of record, Brennan & Sullivan, P.A. (James P. Sullivan and Frank D. Weissbarth, appearing), and for their Motion for Summary Judgment, which is opposed, state as follows:

### I.   INTRODUCTION

This is an action by Plaintiff Rhiannon Montoya ("Ms. Montoya") seeking damages for alleged violations of 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1.  In her amended complaint, Ms. Montoya alleges that in early 2013 she was sexually assaulted by Defendant Orlando Ulibarri while she was incarcerated at the Rio Arriba County

Adult Detention Center ("RACADC").  She also claims that medical care at the RACADC was inadequate.

Ms. Montoya's federal claims should be dismissed pursuant to the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), because she did not exhaust her remedies under the RACADC's grievance policy.  Ms. Montoya's state law claims against the Board of County Commissioners of Rio Arriba County and Rio Arriba County should be dismissed because she did not give timely notice of a claim as required by the Tort Claims Act, NMSA 1978 § 41-4-16. Finally, Ms. Montoya's state law claims against Lawrence DeYapp, Jose Luis Gonzales and Orlando Ulibarri are barred by the Tort Claim's Act's statute of limitations, NMSA 1978 § 41-4-15.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiff Rhiannon Montoya ("Ms. Montoya") was convicted in the First Judicial District Court of the State of New Mexico of aggravated burglary in violation of NMSA 1978 § 30-16-04(a) and tampering with evidence in violation of NMSA 1978 § 30-22-05 on September 9, 2014.  *See* Judgment and Order of Commitment to the New Mexico Department of Corrections attached as **Exhibit 1**.  These crimes were in connection with an incident involving the murder of her uncle, Rudy Montoya, in Mr. Montoya's home in Chimayo, New Mexico.  *See* Newspaper Article attached as **Exhibit 2**.

2.      For these crimes, Ms. Montoya was sentenced to 12 years in state prison.  *See* **Exhibit 1**.

3.      Ms. Montoya was an inmate at the Rio Arriba County Adult Detention Center ("RACADC") on the following dates:

   a.      December 18, 2011 to June 5, 2012;

   b.      December 17, 2012 to December 18, 2012;

2

    c.        January 2, 2013 to May 20, 2013;

    d.        May 20, 2013 to May 24, 2013;

    e.        April 26, 2014 to April 29, 2014;

    f.        June 17, 2014 to July 29, 2014;

    g.        December 3, 2014 to December 9, 2014; and

    h.        April 17, 2015 to April 23, 2015.

*See* Declaration of Jose Luis Gallegos attached as **Exhibit 3**.

4.      At the time of Ms. Montoya's periods of incarceration at the RACADC, there was a grievance policy in place for the purpose of processing inmate grievances.  During each period of incarceration at the RACADC, Ms. Montoya was made aware of the grievance policy.  She acknowledged in writing that she had read and understood the RACADC's Policies and Procedures/Inmate Handbook, which included the grievance policy on December 12, 2012, and again on May 20, 2013. *See* Gallegos Declaration, **Sub-Exhibits 3A, B, and C**.

5.      The grievance policy, Policy Number, RACDC: 095, provides, and provided during the times Ms. Montoya was an inmate at the RACADC, the following:

*Policy:  An Inmate of the Rio Arriba County Detention Facility shall have the right and means to report a grievance without fear of being subjected to any adverse action for doing so.*

*Procedure:*

*1.    Detention Officers shall provide inmates who wish to report a grievance with a copy of the inmate grievance form in an envelope.*
*2.    Inmate grievance forms shall be completed by the inmate and addressed to the shift supervisor.  Envelopes containing grievance forms shall not be opened or read by any detention officer.*

*3.    Upon receiving the form, the shift supervisor shall conduct an investigation.*

*4.    The shift supervisor shall provide a copy of his disposition of the grievance to the inmate filing grievance.*

5.      If the inmate disagrees with the disposition made by the shift supervisor on the grievance, he may appeal the decision to the administrator.  The administrator shall provide a copy of his disposition of the grievance to the resident filing the grievance.

6.      If the inmate disagrees with the disposition made by the administration of the grievance, he/she may appeal the decision to a grievance committee.

7.      The grievance committee shall consist of one staff member, one person involved in law enforcement and one person not involved in law enforcement or detention.

8.      A meeting of a grievance committee shall be held to make a final decision.

9.      The grievance committee shall:
a.      review the administration grievance investigation report and disposition;
b.      hear any additional information or rebuttal from the inmate reporting the grievance;
c.      discuss possible corrective action with the administration, if the situation warrants;
d.      discuss a resolution of the grievance.

10.     All records relating to the grievance shall be placed in the inmate's file.

Gallegos Declaration, **Sub Exhibit 3C**.

6.      The policy requires that inmate grievances are to be sent to the shift supervisor in a closed envelope.  The purpose of this requirement is to enable the person who directly supervises the shift and pod where an alleged incident occurs to address the matter in a timely fashion so as to prevent a reoccurrence of the problem alleged in the grievance, if the shift supervisor determines that it occurred and that the inmate is entitled to relief.  Under the policy, the shift supervisor investigates the grievance when it is received, makes a decision, and notifies the inmate of the decision.  If an inmate is dissatisfied with the shift supervisor's decision, he or she may appeal to the assistant jail administrator, then to the jail administrator, and then to a

4

committee composed of one staff member, one person with a law enforcement background, and one citizen without correctional or law enforcement experience.  *See* Gallegos Declaration, **Exhibit 3**, ¶¶ 9-10, and **Sub Exhibit 3C**.

7.      Ms. Montoya never presented any grievance to any shift supervisor while she was an inmate at the RACADC.  *See* Gallegos Declaration, **Exhibit 3**, ¶ 11.

8.      On January 5, 2015, Jail Administrator, Lawrence DeYapp, received a hand-written "grivance" (sic) (the "grievance letter") from Ms. Montoya by certified mail.  The grievance letter read as follows:

> *Grivance 10/14/14*
>
> *To Whom It May Concern:*
>
> *I Rhiannon Montoya would like to report inappropriate conduct done to me by Correctional Officer Orlando Ulibarri during my time of incarceration at Rio Arriba County Jail.  On or about the month of ~~Feb~~ March, 2013, Correction Officer Orlando Ulibarri misused his position and authority in order to perform sexual acts on me.  I was working in the laundry room doing laundry when I was approached by Correction Officer Orlando Ulibarri who then started making sexual advances at me, which involved touching and grabbing at me and my body including my breast area as well as my vaginal area.  I then told him to stop and not to touch me. He did leave after he was done.  I request to speak with someone about the issue but got no response to help me resolve it.*
>
> */s/ Rhiannon Montoya*

*See* "Grivance" attached as **Exhibit 4**, and DeYapp Declaration, attached as **Exhibit 5,** ¶ 2.

9.      The grievance was not submitted to a shift supervisor at the RACADC at any time in proximity to the alleged events.  Instead, Ms. Montoya mailed the grievance letter to Jail Administrator Lawrence DeYapp over a year after the alleged events forming the basis for her grievance.  At that time, she was no longer an inmate at the Rio Arriba County Adult Detention

Center.  *See* DeYapp Declaration, Exhibit 5, ¶¶ 2 and 3; Gallegos Declaration, **Exhibit 3**, ¶¶ 4 and 11.

10.     Upon receipt of the grievance letter on January 5, 2015, Administrator DeYapp confirmed that Ms. Montoya had not grieved the matters alleged in the grievance to any shift supervisor during the time she was an inmate at the RACADC.  *See* DeYapp Declaration, **Exhibit 5**, ¶ 3.

11.     On March 5, 2015, Ms. Montoya filed a pro se lawsuit in state district court.  The Defendants named in the suit were Rio Arriba County and the Rio Arriba County Detention Center.  No federal claims were alleged in the pro se lawsuit.  *See* DeYapp Declaration, **Exhibit 5**, ¶ 3 and **Sub Exhibit 5A**.

12.     Ms. Montoya's lawsuit made claims that she had not raised in her grievance. Specifically, her pro se lawsuit alleged that she was forced to engage in oral and vaginal sexual intercourse with Rio Arriba County Adult Detention Center Officer Orlando Ulibarri.   In contrast, in her grievance letter, Ms. Montoya confined her complaints to alleging that Officer Ulibarri had made sexual advances that involved touching and grabbing at her, including her breast and vaginal areas.  She also said that she told him to stop and that he left.   She did not claim that Officer Ulibarri engaged in oral or vaginal sex with her.  *See* **Exhibit 4 and Sub Exhibit 5A**.

13.     Ms. Montoya attached a typewritten undated grievance to her pro se lawsuit. **Exhibit 8**.  The grievance alleged she was forced to perform a sex act on Detention Center Officer Orlando Ulibarri in April of 2013.  *See* DeYapp Declaration, **Sub Exhibit 5B**.  This grievance was never received by anyone at the RACADC.  *See* DeYapp Declaration, **Exhibit 5**, ¶¶ 4 and 5.

14.     On July 20, 2015, the Sanchez Law Group, LLC, Ms. Montoya's counsel in the matter now before this Court, entered its appearance as counsel for Ms. Montoya in state district court. *See* Entry of Appearance attached as **Exhibit 6**.

15.     On December 16, 2015, the Sanchez Law Group, LLC moved in state district court to amend Ms. Montoya's complaint.  The proposed amended complaint was attached to the motion and added civil rights claims under federal law to the claims Ms. Montoya was bringing in her suit.  *See* Motion to Amend, attached as **Exhibit 7**.

16.     The proposed amended complaint sought to allege oral and vaginal sex acts that were not mentioned in Ms. Montoya's grievance letter.  *Compare* **Exhibits 4 and 7**.

17.     In the proposed amended complaint, Ms. Montoya also sought to allege lack of medical care while she was an inmate at the Rio Arriba County Adult Detention Center.  *Id*.  Ms. Montoya never mentioned any lack of medical care in her letter grievance.  *Compare* **Exhibit 4** and **Exhibit 7**.

18.     On February 23, 2016, the Sanchez Law Group, LLC withdrew the motion to amend Ms. Montoya's complaint and substituted a second motion to amend.  While the grievance letter, **Exhibit 4**, alleged that in March of 2013 Officer Ulibarri made sexual advances by touching and grabbing at Ms. Montoya, including her breast vaginal areas, and stated that he left after she told him to stop, the proposed Amended Complaint alleged oral and vaginal sex acts.  The proposed Amended Complaint also made allegations about lack of medical care.  Federal claims were proposed to be asserted in the Amended Complaint pursuant to 42 U.S.C. § 1983. *See* Withdrawal of First Motion to Amend Complaint and Second Motion to Amend attached as **Exhibit 8**.

19.     Based on this second motion to amend, the state district court allowed Ms. Montoya to amend her complaint.  The order allowing the amendment was entered on the state

court docket on March 7, 2016.  At the time, Ms. Montoya was an inmate at the New Mexico Women's Correctional Facility.  *See* Order to Amend, attached as **Exhibit 9**.  *See also* Gallegos Declaration, **Exhibit 3**.

20.     The March 7, 2016 Order to Amend also added Lawrence DeYapp, Jose Luis Gallegos and Orlando Ulibarri as Defendants in the case.  *See* **Exhibit 9**.

21.     Due to the assertion of federal civil rights claims in the amended complaint under 42 U.S.C. § 1983, the Board of County Commissioners for Rio Arriba County, Rio Arriba County, Jail Administrator Lawrence DeYapp and Assistant Jail Administrator Jose Luis Gallegos removed Ms. Montoya's suit to this Court.  Removal was effected on April 5, 2016.  (Doc. 1).

22.     After removal, the Board of County Commissioners for Rio Arriba County, Rio Arriba County, Mr. DeYapp, Mr. Gallegos and later Mr. Ulibarri answered Ms. Montoya's suit.  In their answers, the Defendants raised the failure of Ms. Montoya to exhaust her administrative remedies as required by the Prison Litigation Reform Act as an affirmative defense.  (Doc. 3, First Affirmative Defense; Doc. 9, Sixth Affirmative Defense).

23.     In their Answers, the Defendants also raised the statute of limitations as an affirmative defense.  (Doc. 3, Fifth Affirmative Defense; Doc. 9, Seventh Affirmative Defense).

24.     The Board of County Commissioners of Rio Arriba County and Rio Arriba County had no notice that Ms. Montoya intended to file a claim concerning the alleged March 2013 sexual assault by Officer Ulibarri until Ms. Montoya filed her pro se lawsuit in the First Judicial District Court on March 5, 2015 and a copy was received by the County Manager, Detention Center Administrator and the Risk Manager for the County shortly thereafter.  *See* Declaration of Tomas Campos attached as **Exhibit 10**; Declaration of Elipio Mercure attached as

**Exhibit 11**; Declaration of Moises A. Morales, Jr., attached as **Exhibit 12**. *See also*, DeYapp Declaration, **Exhibit 5**, ¶¶ 4-8, **Sub Exhibit 5B**..

25.     In their Answer, the Board of County Commissioners for Rio Arriba County, Rio Arriba County, Mr. DeYapp, and Mr. Gallegos raised Ms. Montoya's failure to provide notice as required by the Tort Claims Act, NMSA 1978 § 41-4-16 as an affirmative defense.  (Doc. 3, seventh affirmative defense).

### III. ARGUMENT

**A. Ms. Montoya's federal claims are barred by the Prison Litigation Reform Act.**

The Prison Litigation Reform Act of 1995 ("PLRA") provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The "PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). To properly exhaust administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

Taking some, but not all, of the steps in the grievance process does not constitute proper exhaustion.   "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010).   The doctrine of substantial compliance does not apply. *Id.*

The Supreme Court has declined to read "futility or other exceptions" into the PLRA's exhaustion requirement. *See Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also Hamby v. Jordan*, 55 F. App'x 887, 888 (10th Cir. 2003). Through the PLRA, Congress "eliminated both discretion to dispense with administrative exhaustion and the condition that it be 'plain, speedy, and effective.'" *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (quoting *Booth*, 532 U.S. at 739). Where a remedy is "available," even if its effectiveness is questionable, a prisoner must exhaust it. *Id.* Simply put, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

Ms. Montoya never provided any grievance concerning the matters alleged in her amended complaint to any shift supervisor at the RACADC. Ms. Montoya did not provide any grievance to anyone at the Rio Arriba County Adult Detention Center until January of 2015, when Administrator DeYapp received the grievance letter in the mail. This was nearly two years after March of 2013 when the alleged sexual advances by Officer Ulibarri supposedly occurred. Ms. Montoya never submitted any grievance alleging that Officer Ulibarri forced her to engage in oral or vaginal sex acts or that the medical care provided at the RACADC was inadequate. Simply put, Ms. Montoya did not follow the procedures set out in the RACADC's grievance policy with respect to the claims made in her amended complaint. As a result, she failed to exhaust her administrative remedies as required by the PLRA, and her claims are barred.

The RACADC's grievance policy provides that grievances be filed by "inmates" and made to the "shift supervisor." This language contemplates that grievances will be filed close in time to the alleged problem, so that the shift supervisor can investigate the alleged conduct and prevent it from reoccurring, if warranted. While she was an inmate at the RACADC, Ms. Montoya never provided any grievance to a shift supervisor as required by the grievance

procedure and she did not send her grievance letter to the Detention Center's Administrator until some twenty-two months after the acts alleged in the letter.  She did not utilize, much less exhaust, her administrative remedies.

The Supreme Court has made it abundantly clear that a prisoner must comply with the requirements of a facility's grievance procedure, and that the failure to follow the steps described in the procedure warrants dismissal of a prisoner's federal claims.  To properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules," . . . -rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).  Ms. Montoya did not follow the Detention Center's grievance process.  As a result, she failed to exhaust her administrative remedies and her federal claims are barred.

To the extent Ms. Montoya may claim that her transfers from the Rio Arriba County Adult Detention Center excuse her failure to utilize the Detention Center's grievance process, that claim is unavailing.  In *Jones v. Barry*, 2005 U.S. App. LEXIS 2180, *8, 2005 WL 319012 (10th Cir. Feb. 10, 2005), the plaintiff argued that his transfer from the Torrance County Detention Center to a different prison excused him from having to exhaust the Detention Center's administrative process.  The Tenth Circuit disagreed.

> "Mr. Jones contends his transfer from the Torrance prison to the prison in Virginia excuses him from having to fully exhaust these claims. We cannot agree. The Supreme Court has "stressed the point" that there are no "futility or other exceptions" to the PLRA's exhaustion requirement. *Booth*, 532 U.S. at 741 n.6. "Even where the 'available' remedies would appear to be futile . . . the prisoner must exhaust the administrative remedies available." *Jernigan*, 304 F.3d at 1032. Thus, the district court correctly dismissed Mr. Jones' action without prejudice.

It is undisputed that Ms. Montoya did not exercise or exhaust her administrative remedies. Accordingly, her federal claims should be dismissed.

11

In her grievance letter, Ms. Montoya made no mention of any problem related to medical care at the Detention Center.  However, in Count VIII of the amended complaint, Ms. Montoya makes a substantive due process claim alleging inadequate medical care.  (Doc. 1-4, pp. 18-19). Nowhere does she assert that she either grieved the claim or exhausted her administrative remedies as to that claim, and the undisputed facts establish that she did not.  Accordingly, the claim is barred.  *See Jones, supra at* U.S. App. LEXIS 2180, *7-8, 2005 WL 319012 ("Jones may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them"); *Jernigan v. Stuchell*, 304 F.3d at 1030, 1033 (10th Cir. 2002).

Similarly, in the Amended Complaint, Ms. Montoya alleges that Mr. Ulibarri forced her to have oral and vaginal sex with him.  No such claim is made in the grievance letter, which, fairly read, alleges only that Mr. Ulibarri made sexual advances, improperly touched Ms. Montoya, and then left after she told him to stop.  *Compare* Doc. 1-4, pp. 5-6 with **Exhibit 4**.  As a result, even if Ms. Montoya had timely submitted a grievance to a shift supervisor containing the statements made in **Exhibit 4,** which she did not do, any claim alleging oral and vaginal sex acts would be barred because she did not raise it in any grievance and thus did not exhaust her administrative remedies.

The PLRA is clear:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).   Ms. Montoya failed to utilize and exhaust her administrative remedies as required by the PLRA.  As a result, all of her federal claims are barred and should be dismissed.

**B.     Ms. Montoya's state law claims against the Board of County Commissioners of Rio Arriba County and Rio Arriba County are barred pursuant to the Tort Claims Act's notice requirement.**

Under the New Mexico Tort Claims Act:

A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived … by Sections 41-4-5 through 41-4-12 NMSA 1978. Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978.

NMSA 1978, § 41-4-4(A).  As a result, Ms. Montoya's state law claims are limited and governed by the Act.  The Act's notice provision states that:

A. Every person who claims damages from the state or any local public body under the Tort Claims Act [41-4-1 NMSA 1978] shall cause to be presented to the … the   county clerk of a county for claims against the county…, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B. No suit or action for which immunity has been waived under the Tort Claims Act [41-4-1 NMSA 1978] shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence.

Under the Act, a person who claims damages against a county is required to provide the county clerk with written notice stating the "time, place and circumstances of the loss or injury" that gave rise to the claim.  Unless notice is given as required in § 41-4-16(A) or unless the public entity had "actual notice of the occurrence," a court is jurisdictionally barred from considering the matter. § 41-4-16(B).

The purpose of the notice requirement in § 41-4-16(B) is "to ensure that the agency allegedly at fault is notified that *it may be subject to a lawsuit*." *City of Las Cruces v. Garcia*, 1984-NMSC-106, ¶ 5, 102 N.M. 25, 690 P.2d 1019 (internal quotation marks and citation omitted); *Dutton v. McKinley County Bd. of Comm'rs*, 1991-NMCA-130, ¶ 9, 113 N.M. 51, 822

P.2d 1134 (stating that it is "firmly established that the notice required is not simply actual notice of the occurrence of the accident or injury but rather, actual notice that there exists a likelihood that litigation may ensue" (internal quotation marks and citation omitted)).  Requiring a potential claimant to provide notice that litigation is likely to ensue is intended to "reasonably alert [the agency] to the necessity of investigating the merits of a potential claim against it." *Smith v. State ex rel. State Dep't of Parks & Recreation*, 1987-NMCA-111, ¶ 12, 106 N.M. 368, 743 P.2d 124; *see also Ferguson v. State Highway Comm'n*, 1982-NMCA-180, ¶ 12, 99 N.M. 194, 656 P.2d 244 (stating that the purpose of the notice requirement under the TCA is to enable an investigation "while the facts are accessible[,]" "to question witnesses[,]" "to protect against simulated or aggravated claims[,]" and "to consider whether to pay the claim or to refuse it").

Ms. Montoya did not give Rio Arriba County or its Board of County Commissioners timely notice of the alleged sexual assault or of any issues related to medical care, and she did not provide timely notice of the likelihood that litigation would ensue until her lawsuit was filed in state district court on March 5, 2015.  Even if Ms. Montoya had timely notified the County of the alleged sexual assault or deficiencies in medical care, which she did not do, without also giving notice of the likelihood of litigation, that would not satisfy § 41-4-16(B).  *Dutton*, 1991-NMCA-130, ¶ 9 (stating that actual knowledge of a plaintiff's alleged injury is insufficient to comply with Section 41-4-16).

Simply put, notice has two components: (i) notice of the alleged injury; and (ii) notice that litigation will likely ensue.  Absent timely notice of both elements, § 41-4-16 bars a claim against a governmental entity.  *Herald v. Bd. of Regents of the Univ. of N.M.*, 2015-NMCA-104, ¶¶ 49-51, 357 P.3d 438, 449.  Accordingly, Ms. Montoya's state law claims against Rio Arriba County and its Board of County Commissioners are barred and should be dismissed with prejudice.

C.    **Ms. Montoya's state law claims against Defendants Lawrence DeYapp, Jose Luis Gallegos and Orlando Ulibarri are barred by the statute of limitations.**

Ms. Montoya's state law claims against these Defendants are limited and governed by the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1.  The Act's statute of limitations provides that:

> A.    Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file. This subsection applies to all persons regardless of minority or other legal disability.

NMSA 1978, § 41-4-15(A).

The improper sexual contact alleged by Ms. Montoya supposedly occurred in March and April of 2013.  Mr. Ulibarri and Defendants Larry DeYapp and Jose Louis Gallegos were added as Defendants in this case on March 7, 2016, when the state district court entered an order allowing Ms. Montoya to file an amended complaint.  (Doc. 1-3).  The state law claims against Defendants DeYapp, Gallegos and Ulibarri were filed more than two years after the acts alleged in the amended complaint.  Accordingly, they are barred by the Tort Claims Act's statute of limitations and should be dismissed with prejudice.

### III. CONCLUSION

Ms. Montoya did not file any grievance within the time or in the manner required by the RACADC's rules, and she never filed any grievance regarding her claims of inadequate medical care and oral and vaginal sex.  In a recent opinion addressing the PLRA's exhaustion requirement, the Supreme Court held that, "The only limit to §1997e(a)'s [exhaustion] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"  *Ross v. Blake*, 195 L. Ed. 2d 117, 130, 2016 U.S. LEXIS 3614, *27, 84 U.S.L.W. 4352 (2016).  Here, Ms. Montoya had a remedy under the RACADC's grievance policy but she

did not use it.  As a result, her federal claims are barred by reason of her failure to exhaust administrative remedies as required by the PLRA.

Ms. Montoya's state law claims against Rio Arriba County and its Board of County Commissioners are barred because she failed to provide a timely notice of claim as required by the Tort Claims Act's notice provision.  Ms. Montoya's state law claims against the individual Defendants are barred by the Tort Claims Act's statute of limitations.  Accordingly, Defendants respectfully request that the Court enter summary judgment against Ms. Montoya on all of her claims.

Respectfully submitted,

YENSON, ALLEN & WOSICK, P.C.

**/s/ Robert W. Becker**
Robert W. Becker
***Attorney for Defendants Board of County***
***Commissioners for Rio Arriba County,***
***Rio Arriba County, Larry DeYapp and***
***Jose Luis Gallegos***
4908 Alameda Blvd NE
Albuquerque, NM  87113-1736
(505) 266-3995
rbecker@ylawfirm.com

BRENNAN & SULLIVAN, P.A.

**/s/ Frank Weissbarth**
James P. Sullivan
Frank D. Weissbarth
***Attorneys for Orlando Ulibarri***
128 E. De Vargas Street
Santa Fe, NM  87501-2702
(505) 995-8514
(505) 995-9710 – FAX
jamie@brennsull.com
frank@brennsull.com

**I HEREBY CERTIFY** that on the 26th
day of July 2016, I filed the foregoing
electronically through the CM/ECF filing
system, which caused the following parties
or counsel to be served by electronic means,
as more fully reflected on the Notice of
Electronic Filing:

Daniel J. Sanchez, Esq.
Daniel A. Sanchez, Esq.
Sanchez Law Group, LLC
620 Roma, NW
Albuquerque, NM  87102
(505) 553-0466
djsanchezesq@gmail.com
dansanchez911@gmail.com
*Attorneys for Plaintiff*

*/s/ Frank D. Weissbarth*